Filed 10/14/25  Uber Technologies v. Cal. Dept. of Industrial Relations CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| UBER TECHNOLOGIES, INC., et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS et al.,<br><br>    Defendants and Respondents. | G064372<br><br>(Super. Ct. No. 30-2023-01330884)<br><br>O P I N I O N |
| LYFT, INC.,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS et al.,<br><br>    Defendants and Respondents. | G064373<br><br>(Super. Ct. No. 30-2023-01368387) |

Appeal from judgments of the Superior Court of Orange County, Melissa R. McCormick, Judge. Affirmed. Requests for Judicial Notice. Denied.

Munger, Tolles & Olson, Jeffrey Y. Wu, Rohit K. Singla, Justin P. Raphael and Matthew W. Linsley; Ogletree, Deakins, Nas, Smoak & Stewart, Karen F. Tynan and Robert C. Rodriguez for Plaintiff and Appellant Lyft, Inc.

Gibson, Dunn & Crutcher, Theane Evangelis, Alexander N. Harris, Blaine H. Evanson, Allison L. Mather and Jaime R. Barrios; Littler Mendelson and Alka Pamchandani-Raj for Plaintiffs and Appellants Uber Technologies, Inc., Uber USA, LLC, Rasier-CA, LLC, Rasier, LLC, and Portier, LLC.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Paul Stein and Meghan H. Strong, Deputy Attorneys General, for Defendants and Respondents Department of Industrial Relations, Division of Occupational Safety and Health, and Jeff Killip.

Feinberg, Jackson, Worthman & Wasow, Catha Worthman and Genevieve Casey; Asian Law Caucus, Winifred Kao and Ammad Rafiqi for Defendants and Respondents LaShon Hicks, James Jordan, Roberto Moreno, Ricardo Valladeres, and Karen VanDenBerg.

*      *      *

In August 2022, the Department of Industrial Relations, Division of Occupational Safety and Health (Cal/OSHA) issued citations to Uber Technologies, Inc. (Uber) and Lyft, Inc. (Lyft) for various regulatory violations it alleged occurred in a three-month window earlier in 2022. Uber and Lyft (collectively, Plaintiffs) appealed the citations to the Department of Industrial Relations Occupational Safety and Health Appeals Board (Appeals

2

Board), each asserting Cal/OSHA did not have jurisdiction to issue the citations because its drivers are independent contractors, not employees. Four Uber drivers and three Lyft drivers (collectively, Defendant Drivers[1]) successfully sought to be made parties to the appeal, asserting they were "affected employees." (Cal. Code Regs., tit. 8, § 354, subd. (b).)

While their administrative appeals were still pending, Plaintiffs filed separate complaints for declaratory relief in superior court, each seeking a declaration that (1) Cal/OSHA did not have jurisdiction to issue the citations because Uber and Lyft drivers are independent contractors; and (2) the Defendant Drivers were independent contractors, not employees—the very issues they had raised in their administrative appeals.

Cal/OSHA and the Defendant Drivers demurred to the complaints. The trial court sustained the demurrers without leave to amend on the ground Plaintiffs had failed to exhaust their administrative remedies. We affirm.

FACTS

I.

UBER

On August 1, 2022, Cal/OSHA issued a citation to Uber pursuant to Labor Code section 6317, subdivision (a), identifying three alleged regulatory violations during the period April 29, 2022 to August 1, 2022: (1) failure to establish an effective injury and illness prevention program (Cal. Code Regs., tit. 8, § 3203, subd. (a)); (2) failure to maintain records (*id.*,

---

[1] Two of the individual drivers, Moreno and VanDenBerg, were made parties in both the Uber and Lyft administrative appeals (presumably because they drive for both companies); thus, only a total of five individual Defendant Drivers are respondents here.

3

§ 3203, subd. (b)); and (3) failure to establish an effective Covid-19 prevention program for its drivers (*id.*, § 3205, subd. (c)). Uber appealed the citation to the Appeals Board (the Uber Cal/OSHA appeal) and asserted affirmative defenses challenging Cal/OSHA's jurisdiction on the theory that, under Business and Professions Code section 7451, subdivisions (a)–(d), the drivers working for Uber were independent contractors, not employees.[2]

On March 17, 2023, four Uber drivers, LaShon Hicks, James Jordan, Robert Moreno, and Karen VanDenBerg (collectively, the Uber Drivers), moved for party status in the Uber Cal/OSHA appeal, asserting they were "affected employees." (Cal. Code Regs., tit. 8, § 354, subd. (b).) Uber objected to the motion on the same ground asserted in its affirmative defenses, i.e., Cal/OSHA did not have jurisdiction to issue the citation because, under Business and Professions Code section 7451, the Uber Drivers were independent contractors, not employees.[3]

The Appeals Board granted the Uber Drivers' motion to be made parties to the Uber Cal/OSHA appeal. Uber asked the Appeals Board to reconsider that decision, again asserting the Uber Drivers could not be "'affected employees'" because they were independent contractors, not employees.

---

[2] Business and Professions Code section 7451, enacted by the voters through Proposition 22 (Gen. Elec. (Nov. 3, 2020)), provides that app-based drivers are independent contractors and not employees if four specified conditions are satisfied. All undesignated statutory references are to the Business and Professions Code.

[3] Uber also filed a motion for judgment on the pleadings on the same ground, which the Appeals Board denied.

The same day it filed its petition for reconsideration, Uber filed a complaint for declaratory relief in Orange County Superior Court against Cal/OSHA, the chief of Cal/OSHA, and the Uber Drivers. The complaint asked the court to "enter a declaratory judgment, declaring that the [Uber Drivers] are independent contractors, and not Uber's employees, under [section 7451's] standard," as well as "a declaratory judgment, declaring that Cal/OSHA is exceeding its jurisdiction in investigating and issuing its citation to Uber."

Cal/OSHA and the Uber Drivers demurred to Uber's complaint. The trial court sustained the demurrers without leave to amend on the ground Uber had not exhausted its administrative remedies because the question of the drivers' employment status—and the related question of Cal/OSHA's jurisdiction—were still pending in the Uber Cal/OSHA appeal. A judgment of dismissal was entered against Uber, which appealed to this court.

II.

LYFT

The facts regarding Lyft are similar. On August 1, 2022, Cal/OSHA issued a citation to Lyft identifying the same three alleged regulatory violations as those set forth in the Uber citation, for the same three-month period. Like Uber, Lyft appealed the citation to the Appeals Board (the Lyft Cal/OSHA appeal) and, also like Uber, asserted affirmative defenses challenging Cal/OSHA's jurisdiction on the theory the drivers working for Lyft were independent contractors under section 7451, subdivisions (a)–(d). Drivers Robert Moreno, Ricardo Valladeres, and Karen

VanDenBerg (collectively, the Lyft Drivers) successfully moved to be made parties to the Lyft Cal/OSHA appeal.

Lyft moved to bifurcate its Lyft Cal/OSHA appeal so the employment status of the drivers would be resolved first. The Appeals Board granted the motion, stating: "For [Cal/OSHA] to have jurisdiction to issue a citation, the workers that are the subject of a citation must be employees, not independent contractors. . . . As such, whether an employee-employer relationship exists between Lyft and the drivers may be dispositive of the entire matter. *If the drivers are determined to be properly classified as independent contractors, then the citations must be dismissed on that basis alone. . . .* [¶] . . . [¶] Accordingly, the hearing shall be bifurcated with the initial hearing set to consider the issue of whether an employment relationship exists between Lyft and its drivers. All legal claims and defenses related to this jurisdictional issue must be raised at the first stage of the hearing." (Italics added.)

Five months later, before any part of the Lyft Cal/OSHA appeal had been heard, Lyft filed a complaint for declaratory relief in the Orange County Superior Court against Cal/OSHA, the chief of Cal/OSHA, and the Lyft Drivers. Like the Uber complaint, Lyft's complaint asked the court to "enter a declaratory judgment, declaring that the [Lyft Drivers] are independent contractors, and not Lyft's employees, under [section 7451's] standard," as well as "a declaratory judgment, declaring that Cal/OSHA is exceeding its jurisdiction in investigating and issuing its citations to Lyft . . . ."

Cal/OSHA and the Lyft Drivers demurred to the complaint. The trial court sustained the demurrers without leave to amend on the ground Lyft had failed to exhaust its administrative remedies because the questions

6

of the drivers' employment status and Cal/OSHA's jurisdiction were still pending in the Lyft Cal/OSHA appeal. The court entered a judgment of dismissal against Lyft, which appealed to this court.

We consolidated Plaintiffs' appeals for all purposes.

## DISCUSSION

### I.

#### STANDARD OF REVIEW

"We review the trial court's sustaining of a demurrer de novo and apply the abuse of discretion standard in reviewing the court's denial of leave to amend." (*Feliz v. County of Orange* (2023) 91 Cal.App.5th 927, 932.) Further, "'[w]hether the doctrine of exhaustion of administrative remedies applies in a given case is a legal question that we review de novo.'" (*Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1023.)

### II.

#### ADMINISTRATIVE EXHAUSTION

"Generally, 'a party must exhaust administrative remedies before resorting to the courts. [Citations.] Under this rule, an administrative remedy is exhausted only upon "termination of all available, nonduplicative administrative review procedures."' [Citations.] 'The rule "is not a matter of judicial discretion, but is a fundamental rule of procedure . . . binding upon all courts."' [¶] The exhaustion doctrine is primarily grounded on policy concerns related to administrative autonomy and judicial efficiency. [Citation.] The doctrine favors administrative autonomy by allowing an agency to reach a final decision without interference from the courts. [Citation.] Unless circumstances warrant judicial involvement, allowing a court to intervene before an agency has fully resolved the matter would 'constitute an interference with the jurisdiction of another tribunal.'

7

[Citation.] If exhaustion were not required, a litigant would have an incentive to avoid securing an agency decision that might later be afforded deference. [Citation.] Further, creating an agency with particular expertise to administer a specific legislative scheme would be frustrated if a litigant could bypass the agency in the hope of seeking a different decision in court. [¶] As to judicial efficiency, the doctrine allows an administrative agency to provide relief without requiring resort to costly litigation. [Citation.] Even when an administrative remedy does not resolve all issues or provide complete relief, it still may reduce the scope of litigation. [Citation.] Requiring a party to pursue an available administrative remedy aids judicial review by allowing the agency to draw upon its expertise and develop a factual record for the court's consideration." (*Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 382–383.)

In short, as our Supreme Court has underscored, "courts should not interfere with an agency determination until the agency has reached a final decision" and "overworked courts should decline to intervene in an administrative dispute unless *absolutely necessary*." (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 391, italics added, cited with approval in *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080 (*Coachella*).)

Cal/OSHA issued citations to Uber and Lyft pursuant to Labor Code section 6317, which authorizes the issuance of citations for safety violations by employers in California. When a citation is issued, Labor Code section 6600 provides an administrative remedy—specifically, a right to

8

appeal the citations to the Appeals Board.[4] Both Plaintiffs availed themselves of that administrative remedy. In their appeals of the citations to the Appeals Board, each of the Plaintiffs raised the issue of their drivers' employment status under Business and Professions Code section 7451—the same issue they raised in the complaints they filed in superior court. Under general principles, therefore, Plaintiffs were required to complete the administrative process before pursuing their claims in superior court.

Plaintiffs argue they are not required to exhaust their administrative remedy for two reasons. First, they assert their complaints against the Driver Defendants seek a declaration of the Driver Defendants' employment status "for all purposes"—a claim they argue is different from (and broader than) the claims raised in their appeals to the Appeals Board (collectively, the Cal/OSHA appeals). Second, they contend exhaustion is not required because Cal/OSHA did not have jurisdiction to issue the citations. We find neither argument persuasive.

*A. Plaintiffs' Cal/OSHA Appeals and Superior Court Actions Seek the Same Relief*

Plaintiffs' assertion the declaratory relief claims asserted in their lawsuits seek relief other than what they seek in the pending Cal/OSHA appeals is disproven by their own allegations. Uber's civil complaint alleges

---

[4] Once the Appeals Board has issued a decision, that decision can be challenged by filing a petition for a writ of mandate in superior court. (Lab. Code, § 6627.)

9

the controversy between the parties arises out of the Uber Cal/OSHA appeal.[5] The Lyft complaint makes the same allegation as to the Lyft Cal/OSHA appeal.[6]

Even though Plaintiffs' own allegations demonstrate their declaratory relief complaints arose out of the Cal/OSHA citations and the issues they raised therein are identical to the issues currently pending in the Cal/OSHA appeals, Plaintiffs argue the civil complaints are not subject to the exhaustion requirement because they seek a declaration the Defendant Drivers are independent contractors "for all purposes"—purposes Plaintiffs

---

[5] Paragraph 21 of Uber's complaint reads, in part: "The Court may grant declaratory relief under California Code of Civil Procedure section 1060. There is an actual controversy between the parties that is fit for this Court's resolution. Cal/OSHA has issued citations against Uber involving the Driver Defendants, but Cal/OSHA only has jurisdiction to issue these citations to workers classified as employees. Both Cal/OSHA and the Driver Defendants erroneously assert that the Driver Defendants should be classified as employees, despite the clear application of [Business and Professions Code section 7451]. Uber is thus being forced to respond to an investigation and may face penalties even though the Driver Defendants are not 'employees' within Cal/OSHA's jurisdiction."

[6] Paragraph 16 of Lyft's complaint reads, in part: "There is an actual controversy between the parties that is fit for judicial resolution. Cal/OSHA conducted an inspection and issued citations against Lyft involving the Driver Defendants, but the agency's jurisdiction is limited to employment locations where workers are correctly classified as employees. . . . The Driver Defendants have submitted sworn declarations and sought party status as 'affected employees' in Lyft's appeal of the Cal/OSHA citations. Both Cal/OSHA and the Driver Defendants assert that the Driver Defendants and rideshare drivers on the Lyft platform writ large are correctly classified as employees under the controlling standard of [section 7451]. Lyft is thus compelled to respond to an investigation and undertake an administrative appeal, and faces penalties, even though the drivers are not employees and their workplaces (i.e., their own vehicles) are not within Cal/OSHA's jurisdiction."

10

contend would include unemployment benefits, workers' compensation benefits, and "myriad other issues governed by worker classification status." Even if this contention were consistent with the relief sought in Plaintiffs' civil complaints, such requests would not be a proper subject for declaratory relief.

To be entitled to seek declaratory relief, a party must show ""'an actual controversy involving justiciable questions relating to [the party's] rights or obligations.'"" (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 909.) An actual controversy "'is one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, not suggest, what the parties may or may not do.' [Citation.] In a complaint seeking declaratory relief, "'an actual, present controversy must be pleaded specifically" and "the facts of the respective claims concerning the [underlying] subject must be given."' [Citation.] [¶] One purpose of declaratory relief is ""to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation."" [Citation.] ""One test of the right to institute proceedings for declaratory judgment is the necessity of present adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights."'" (*American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728, 741–742, fn. omitted.)

The Driver Defendants asserted their employment status in connection with the Cal/OSHA appeals of the three citations issued to each company for a three-month period in 2022. But the record does not demonstrate, and Plaintiffs did not allege, the Driver Defendants have asserted their employment status in any other setting or for any other

11

purpose that would create an actual pending controversy. As far as the record before us shows, there is no actual controversy between the parties *outside of* the issues raised in the Cal/OSHA appeals. Accordingly, any declaration by the trial court of Driver Defendants' employment status "for all purposes" effectively would be an advisory opinion.

## B. Exhaustion Is Required

Even if we were to conclude the issues presented by Plaintiffs' declaratory relief complaints were a proper subject for declaratory relief, Plaintiffs still would be required to exhaust their administrative remedies.

Citing *Coachella, supra*, 35 Cal.4th 1072, Plaintiffs argue they fall within an exception to the exhaustion requirement because Cal/OSHA did not have jurisdiction to issue the citations. "[E]xhaustion of administrative remedies may be excused when a party claims that 'the agency lacks authority, statutory or otherwise, to resolve the underlying dispute between the parties.'" (*Id.* at pp. 1081–1082.) "In deciding whether to entertain a claim that an agency lacks jurisdiction before the agency proceedings have run their course, a court considers three factors: the injury or burden that exhaustion will impose, the strength of the legal argument that the agency lacks jurisdiction, and the extent to which administrative expertise may aid in resolving the jurisdictional issue." (*Id.* at p. 1082.)

Regarding the first *Coachella* factor, Plaintiffs have not shown they "would suffer any unusual or irreparable injury if [they] were required to litigate" the validity of the Cal/OSHA citations before the Appeals Board to completion before asking the courts to address the issue. (*Coachella, supra*, 35 Cal.4th at 1082.) Indeed, their briefs do not argue they will suffer any injury or burden if the Cal/OSHA appeals are allowed to proceed to a conclusion. At oral argument, Uber's counsel suggested the burden consists of

12

the uncertainty of not knowing how the issue ultimately will be resolved and the fact that it is taking considerable time for the administrative appeal to run its course. Neither argument justifies circumventing the administrative proceedings. A remedy is not inadequate "merely because additional time and effort would be consumed by its being pursued through the ordinary course of the law." (*Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1269, cited with approval in *Coachella*, *supra*, 35 Cal.4th at p. 1082.)

We understand Plaintiffs' desire to obtain, sooner rather than later, a resolution of the question whether its drivers are employees or independent contractors. We suspect most (if not all) litigants share the preference for a quick resolution to their dispute. But if the desire for a prompt resolution of an administrative dispute and the concomitant desire to be relieved of the uncertainty regarding how it will be resolved were enough to excuse a party from exhausting its administrative remedies, the administrative exhaustion doctrine would be a dead letter.

Likewise, we are not persuaded by Plaintiffs' assertion they should be excused from exhausting their administrative remedies because the employment status of their drivers implicates an "'important question[] of public policy'" that requires prompt resolution. In *Coachella*, the Supreme Court concluded the plaintiff was excused from exhausting administrative remedies in part because the dispute involved a "fundamental" (*Coachella*, *supra*, 35 Cal.4th at p. 1082) "issue[] of law with broad public importance" (*id.* at p. 1077)—namely, the statute of limitations governing all public employees' claims for alleged violations of the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.). There is no such "fundamental legal question" at play here. (*Coachella* at p. 1082.) As noted above, whether Plaintiffs' relationships with their drivers meets the four criteria of section 7451 for purposes of the

13

two subject citations is a factual issue that requires development of a record, not a purely legal question such as what statute of limitations governs. Moreover, without minimizing the significance of the issue to these two companies and their drivers, we are not persuaded this question rises to the level of a policy issue of such broad public import and application that it would justify bypassing the administrative process.[7]

The second *Coachella* factor is the strength of Plaintiffs' legal argument the agency lacks jurisdiction. Plaintiffs insist they have complied with all the requirements of section 7451 such that all of their drivers are independent contractors, which means Cal/OSHA had no jurisdiction to issue its citations. (§ 7451, subds. (a)–(d).) But Plaintiffs' assertion does not end the inquiry—which is to say, the fact that Plaintiffs *say* it is so does not *make* it so. Whether the terms of Plaintiffs' relationship with their drivers met all of the conditions set forth in section 7451 during the period in question is not, as Plaintiffs suggest, a purely legal question of statutory interpretation that

---

[7] Nor is the driver classification issue, as it affects these two private companies with respect to the two subject citations, akin to the issue in *Lindeleaf v. Agricultural Labor Relations Bd.* (1986) 41 Cal.3d 861, a case cited by Uber. In that case, the California Supreme Court held administrative exhaustion was excused because refusing to permit a court to hear the issue on the merits "would affect not only the present parties, but also the parties to every nonfinal decision of the [Agricultural Labor Relations Board] on election challenges that involved hearings and recommendations by an [investigative hearing examiner]." (*Id.* at p. 870.) That is a far cry from the validity of two citations against each of two companies covering a three-month period in 2022.

14

is uniquely within the expertise of the courts.[8] To the contrary, it is a series of inherently *factual* determinations: During the period covered by the citations, did each company "unilaterally prescribe specific dates, times of day, or a minimum number of hours during which [its drivers] must be logged into" the application or platform? (§ 7451, subd. (a)). Did each company require its drivers "to accept any specific rideshare service or delivery service request as a condition of maintaining access" to the company's application or platform? (*Id.*, subd. (b).) Did each company "restrict [its drivers] from performing rideshare services or delivery services through other network companies except during engaged time"? (*Id.*, subd. (c).) Did each company "restrict [its drivers] from working in any other lawful occupation or business"? (*Id.*, subd. (d).)

Whether both Plaintiffs satisfied all four statutory conditions for purposes of these citations necessarily will require taking evidence and developing a factual record. There is no such record before us. There is therefore no basis on which we could find Plaintiffs have shown their argument Cal/OSHA lacked jurisdiction to issue these two citations is so

---

[8] At oral argument, Uber's counsel insisted the reason the driver classification question is a purely legal one is that Plaintiffs' compliance with the four criteria of section 7451 during the period at issue is "undisputed" or "uncontested" because respondents have not, to date, disclosed (or been required to disclose) their contentions regarding which of the statutory criteria Plaintiffs do not satisfy. This argument is hardly compelling. Even if it is true respondents have not yet been required, in discovery or otherwise, to specify the facts supporting the administrative citations and their contention Cal/OSHA has jurisdiction over Plaintiffs for the three months at issue, that certainly does not mean the issue is undisputed or uncontested and can be decided as a matter of law. The fact respondents are vigorously contesting this appeal is ample indication the dispute is very much alive.

strong it would warrant excusing Plaintiffs from exhausting their administrative remedies.

That brings us to the third *Coachella* factor—the extent to which the agency's administrative expertise may aid in resolving the jurisdictional issue. Respondents assert that, because Cal/OSHA's jurisdiction extends only to employers and employees, the agency and the Appeals Board necessarily have extensive expertise in determining whether workers are properly classified as employees or independent contractors. But in assessing the status of Uber and Lyft drivers, the Appeals Board will not be applying standards it has traditionally applied. The classification of Plaintiffs' drivers is governed by the new test set forth in section 7451—which applies only to "app-based driver[s]" and did not become effective until December 2020— which provides app-based drivers are independent contractors if four specific factual criteria are met. We are not persuaded the Appeals Board has any special expertise in resolving those specific factual issues so as to weigh in favor of requiring the administrative appeal to run its course before permitting Plaintiffs to seek judicial intervention.[9]

That said, having considered all three *Coachella* factors— including, especially, Plaintiffs' failure to demonstrate the strength of their argument the agency lacked jurisdiction to issue the subject citations—we conclude, on balance, Plaintiffs have not shown they are exempt from the

---

[9] We express no opinion on whether the determination of Plaintiffs' compliance with the four conditions of section 7451 for purposes of the subject citations can be made as to all drivers as a whole or whether it requires individualized determinations of the working terms and conditions of each driver during the specific, approximately three-month period at issue in the subject citations. That question is not before us.

requirement they exhaust their administrative remedies before resorting to the courts.

## III.

### LEAVE TO AMEND

Plaintiffs argue the trial court erred in sustaining the demurrers without giving them an opportunity to amend their complaints. We disagree.

"""Generally it is an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment. [Citation.] . . . However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion. [Citations.] Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. [Citation.]" [Citation.]' [Citation.] 'The onus is on the *plaintiff* to articulate the "specifi[c] ways" to cure the identified defect, and absent such articulation, a trial or appellate court may grant leave to amend "only if a potentially effective amendment [is] both apparent and consistent with the plaintiff's theory of the case."'" (*Nissanoff v. UnitedHealthCare Ins. Co.* (2024) 108 Cal.App.5th Supp. 1, 14–15.)

In opposition to the demurrers, Plaintiffs did not articulate any way in which they could cure the defects in their complaints, i.e., their failure to exhaust their administrative remedies. Thus, they did not meet their burden, and the trial court did not err in sustaining the demurrers without leave to amend.

On appeal, Plaintiffs suggest they could amend their superior court complaints by simply "removing CalOSHA as a defendant and proceeding on only the claims for declaratory relief against Driver Defendants." Such an amendment would not change the legal effect of the

17

complaints or dispense with the need for Plaintiffs to exhaust their administrative remedies. It is not just Cal/OSHA as to which Plaintiffs must exhaust their administrative remedies. The Driver Defendants are parties to the pending administrative appeal proceedings and Plaintiffs cannot proceed with their lawsuit against them without exhausting their administrative remedies as to them. In any event, even if Plaintiffs were to remove Cal/OSHA as a defendant in the lawsuits, there still would be no actual controversy between Plaintiffs, on the one hand, and Defendant Drivers, on the other hand, *other than that based on the administrative citations.*

IV.

REQUESTS FOR JUDICIAL NOTICE

The Driver Defendants ask us to take judicial notice of four documents that were filed in the Lyft Cal/OSHA appeal after the superior court entered its judgment. They include (1) Lyft's motion to further bifurcate the appeal; (2) Cal/OSHA's opposition to the motion; (3) the Driver Defendants' opposition to the motion; and (4) Lyft's reply in support of the motion. Similarly, Cal/OSHA asks us to take judicial notice of three additional documents that were issued or filed after entry of the superior court judgment: (1) a decision issued by the Appeals Board; (2) a petition for writ of mandate filed by Uber in the superior court; and (3) a notice of related case filed by Cal/OSHA in superior court.

"'It is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered. [Citation.] This rule preserves an orderly system of [litigation] by preventing litigants from circumventing the normal sequence of litigation.' [Citation.] No exceptional circumstances appear that would justify deviating

18

from this general rule in the present case . . . . Moreover, to take judicial notice of additional records at this stage of the litigation would deprive the parties of any opportunity to respond, either by offering additional evidence or by tailoring their arguments to address these new facts. Therefore, we rely solely upon the evidence that was presented to and considered by the trial court." (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.)

This fundamental principle is fully applicable here. We deny both requests for judicial notice.

## DISPOSITION

The judgment is affirmed. The requests for judicial notice are denied. Respondents shall recover costs on appeal.

GOODING, J.

WE CONCUR:

DELANEY, ACTING P. J.

BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6, of the California Constitution.

19